IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FLEMING COMPANIES, INC., et al., | ) | Case No.: 03-10945 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |
| POST CONFIRMATION TRUST, | ) | |
| | ) | |
| Plaintiff, | ) | JURY TRIAL DEMANDED |
| | ) | |
| v. | ) | |
| | ) | C.A. No.: 05-734 SLR |
| CARTER PERROTT, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT CARTER PERROTT ARGUEMENT'S OPPOSING THE MOTION FOR SUMMARY JUDGMENT OF PLAINTIFF, POST CONFIRMATION TRUST



FILED
JUN - 5 2006
U.S. DISTRICT COURT
DISTRICT OF DELAWARE
BD scanned

### 1.    STANDARDS OF DECISION

**A.    The Trial Court May Grant Summary Judgment Only In Cases Wholly "Without" Merit; The Court Must Preserve The Right To A Jury Trial For All Other Cases, Including "Weak" Ones**

The trial court's sole function on a motion for summary judgment is issue finding, not issue determination. Saldana v. Globe-Weis Systems, Inc. (1991) 233 Cal.App.3d 1501, 1510.
B. on a motion for summary judgment we are bound by the statute to distinguish between a case which is simply weak and a case which "cannot be established." Hagen v. Hickenbottom (1995) 41 Cal.App.4th 168, 188

1  For these reasons, "...doubts as to the propriety of summary

2  judgment should be resolved against granting the motion."

3  <u>Parsons v. Crown Disposal Co.</u> (1997) 15 Cal.4th 456, 500.

4  **C.  The Motion Must Be Denied If There Exists Any Possible Conflicting Inference**

5  "[T]he moving party's supporting documents are strictly construed and his opponent's are liberally
6  construed..." *Parsons, supra,* at 500.

7  "In other words, the facts alleged in the evidence of the party opposing summary judgment (and the reasonable
8  inferences drawn therefrom) must be accepted as true." <u>Cross v. Bonded Adjustment Bureau</u> (2d Distr. 1996) 48
9  Cal.App.4th 266, 278.

10      The submission of evidence which is equivocal or from which conflicting inferences may be drawn his
11  insufficient to meet the movant's burden.  (See, e.g., *Brantley v. Pisaro* (1996) 42 Cal.App.4th 1591, 1606, 50
12  Cal.Rptr.2d 431.)  The court should have denied the motion rather than shifting the burden... <u>Anderson v.
13  Metalclad Insulation Corp.</u> (1999) 72 Cal.App.4th 284, 297, 85 Cal.Rptr.2d at 339.

14
15  [Questions of fact] may be resolved on summary judgment only when 'the facts are undisputed and no conflicting
16  inferences are possible.' <u>Farmers Ins. Group v. County of Santa Clara</u> (1995) 11 Cal.4th 992, 1043 (Kennard,
    dissenting)
17
18  These rules of evidentiary construction are necessary to
19  avoid unjustly depriving plaintiff of a jury trial, the right to
20  which exists as strong policy.

21  **D.  Movants Bear The Burden of Persuasion Throughout**
22  "[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion
23  that there is no triable issue of material fact and that he is entitled to judgment as a matter of law...
24  <u>Aguilar v. Atlantic Richfield Co.</u> (2001) 25 Cal.4th 826, 850, 107 Cal.Rptr.2d 841, 24 P.3d 493.

25  ///
26  ///
27  ///
28  ///

1    **E.  Movants Cannot Carry Their Burden By Ignoring
     Allegations or Record Evidence**

2

3    Having chosen to base its motion on the argument that
     there was no evidence in the record to support

4    plaintiff's claim, Celotex was not free to ignore
     supporting evidence that the record clearly contained.
     Rather, Celotex was required, as an initial matter, to

5    attack the adequacy of this evidence.  Celotex Corp. v.
     Catrett (1986) 477 U.S. 317, 336, 106 S.Ct. 2548, 2559,

6    91 L.Ed.2d 265, Brennan, J., dissenting.

7    **F.  Moving Parties Cannot Carry Their Initial Burden By
     Argument**

8

9    Moving parties cannot carry their initial burden by simply

10   arguing.

11        ... Neither case [Union Bank or Hunter] held that a
          moving party can simply argue or allege that the

12        opposing party has no evidence.  It to do so
          effectively plays an initial burden upon the opposing

13        party that would directly contradict the procedure for
          burden shifting expressly set forth in the amended

14        statute.  No California case has concluded that a party
          moving for summary judgment can simply *argue* there is

15        an "absence" of fact to support the opposing party's
          case.  The statute itself states otherwise: "... in

16        determining whether the papers show...  There is no
          triable issue as to any material fact the court shall

17        consider all of the evidence set forth in the
          papers,...and all inferences reasonably deducible from

18        the evidence..." (§437c, subd. (c), italics added.)
          This distinction is the genesis of the reluctance of

19        some courts to follow *Hunter*.  Scheiding v. Dinwiddie
          Const. Co. (1999) 69 Cal.App.4th 64, 81, 81 Cal.Rptr.2d

20        360, 371.

21                    **2.  SUBSTANTIVE ARGUMENT**

22   At least two material issues of fact are proven to exist by

23   the evidence submitted, both from that offered by plaintiffs

24   and by defendants.

25

26

27

28

It is an undeniable fact that the Claimants injury incurred on 11/30/2002, when Mr. Perrott slipped and fell in the Food-4-Less Store in Hanford, CA. Store surveillance cameras will show the incident. In addition, Mr. Charles Perez, Store Manager, called the police and fire departments after the fall occurred. The police report, Mr. Perez, and Mr. Clinton Smith, Chief EMT, noted an unknown substance on the waxed floor that had skid marks where Mr. Perrott slipped and injured himself. The skid marks were measured at between 20 and 24-inches. Mr. Smith, in fact, asked Mr. Perez about the substance.

The Debtor's, Greg Moore, and their attorney's would like to have the court believe that Mr. Perrott had a pre-existent injury; however, Mr. Perrott was a frequent customer of the Food-4-Less Store in Hanford, CA and had been seen walking without obstruction or assistance from any person or apparatus for over two years by Food-4-Less staff. Video surveillance and Food-4-Less employees, including Mr. Perez, are able to verify this fact. In addition, Mr. Clinton Smith, Chief EMT, was acquainted with Mr. Perrott prior to the date the injury occurred and can testify that Mr. Perrott walked without obstruction.

The facts clearly prove that the injury occurred at Food-4-Less and is legitimate.

In regard to the PCT'S objection, the Claimant requests that the Honorable Mary F. Walrath consider the following facts as they relate to the Debtor's false allegations:

1. Mr. Perrott has at no time engaged in *"suspicious—if not outright evasive—behavior in connection with this alleged accident."*

The Debtor's state that, "Mr. Perrott refused to sign the financial responsibility and admittance paperwork when he was first treated for his injuries (Exhibit A)."

The Debtor's omit the fact that Food-4-Less Stores was the responsible party to sign the admittance paperwork which reads that the signing party bears the financial responsibility for any and all treatments. As the injury was due to negligence on the part of Food-4-Less, the Claimant informed the medical center to hold Food-4-Less responsible for the signing. Medical center staff agreed to forward the documents to Food-4-Less Stores.

The Debtor's claim that *"Mr. Perrott provided a false social security number, and refused to present a copy of his social security card."*

Mr. Perrott never provided a false social security number. In fact, the court will find attached a Patient Introduction Form from the office of Jesse P. Silva, D.C., dated 1/10/2003, that was sent to Greg Moore, ESIS Claims Adjustor, as part of the Claimants attempts to amicably work with the Debtor's and their representatives. This document clearly displays the Claimants social security number.

2. Mr. Perrott at no time *"refused to present a copy of his social security card."*

Greg Moore, ESIS, falsely alleged in a 3/19/2003 letter that Mr. Perrott refused to

"cooperate and provide the information we requested" to a National Claims Control Representative.

It is interesting that neither Mr. Moore nor the Debtor's legal counsel make mention of the fact that the supposed National Claims Control Representative arrived at Mr. Perrott's home without any documentation of his affiliation with the National Claims Control. Upon being asked by Mr. Perrott to show supporting documentation (agency ID badge, et al) to identify himself, the alleged representative stated that he had none.

Mr. Perrott attempted to call Greg Moore to verify that the person was in fact a legitimate employee of National Claims Control. Mr. Moore was not available to take the Claimants call. Mr. Perrott allowed the representative to visually view his social security card, but did not relinquish a copy. The alleged representative told Mr. Perrott that he would speak to Mr. Moore and arrange another visit and bring proper identification. The alleged representative never returned to Mr. Perrott's home.

If it pleases the court, the Claimant would request that the court ask Mr. Moore why this critical information was purposefully omitted in the information submitted to the court and why this alleged representative would appear at Mr. Perrott's home without identification linking him with National Claims Control.

3. It has been established that Mr. Perrott had no prior physical injury that caused difficulty in walking, despite allegations by the Debtor's attorney(s) and Mr. Moore.

Mr. Perrott has been inappropriately characterized by the Debtor's and their representatives as having "dodged the insurer's attempts to verify his representation" of having no prior medical diagnosis of his right knee.

Mr. Perrott has demonstrated that his injury occurred on 11/20/2002, and has provided a statement from his physician reiterating this fact. It is unrealistic and unethical to ask the Claimant to provide a medical diagnosis that he had no need of in the past. Surely, the Debtor's and their representatives are aware that no person seeks medical treatment for an injury that they do not yet have. In the same way, Mr. Perrott had no prior reason to seek medical attention for his right knee. Unfortunately, the Debtor's and their representatives are trying to sway the opinion of the court with such malicious tactics.

4. The court will notice a pattern of falsifications and distortions of fact on the part of the Debtor's and their representatives.

Examples include:
- *Questioning the date of Dr. Lancy Allyn's letter substantiating Mr. Perrott's injuries.*

  In response, the Claimant respectfully asks the court to consider the content of Dr. Allyn's letter which clearly shows that this letter is not speaking to a prior injury as the Debtor's and their representatives, particularly Mr. Moore, would like to

deceive the court into believing. For example, in the body of the letter, Dr. Allyn discusses having examined Mr. Perrott on 1/28/03. Dr. Allyn further mentions in the body of the letter that the injury occurred on 11/30/02.

Dr. Allyn is a well respected, Board Certified Orthopedic Surgeon. He offered Mr. Moore a professional assessment of the injuries sustained by Mr. Perrott as a result of negligence on the part of the Debtor's and went so far as to invite Mr. Moore to contact him for further assistance.

It is not surprising, given their refusal to negotiate honestly or in good faith with the Claimant, that Mr. Moore nor the Debtor's attorney(s) have contacted Dr. Allyn nor taken his professional diagnosis as factual.

Dr. Allyn stated in his diagnosis that Mr. Perrott suffered a fracture of the right patella, fracture of the proximal fibula, fracture of the tibial plateau, fracture of superior pubic ramus, hypertension (unable to extend the knee against gravity), and injury to the anterior aspect of the right knee.

The court is aware that x-rays show bone. Dr. Allyn diagnosed that the injuries were due to the fall at Food-4-Less. Dr. Allyn further mentions hypertension that would not show on an x-ray. To reiterate, Dr. Allyn's assessment of the injuries relating to the 11/30/2002 incident and the fact that Mr. Perrott had no knee difficulties that obstructed movement prior to this event provide indisputable evidence that Mr. Perrott's claim is legitimate.

- *Allegations that Mr. Perrott has "not provided any evidence to establish that he even had an accident in the Food-4-Less store.*

  The evidence provided by Mr. Perrott clearly shows that he has more than established that the accident occurred at the Food-4-Less store on 11/30/2002. The police report, EMT report, statement by the store manager, surveillance cameras, and subsequent medical reports provide irrefutable evidence that the accident occurred in the Food-4-Less. It is disturbing, yet characteristic, of the Debtor's and their attorneys that they are taking such a fraudulent approach and making such statements to the court.

  Additionally, the court is asked to consider the initial response of Mr. Moore after the injury. Prior to the current OBJECTION TO CLAIM 914, Mr. Moore at no time denied or questioned that the store was responsible for Mr. Perrott's slip and fall in the Food-4-Less Store.

  It is clear that Mr. Moore launched a personal investigation into Mr. Perrott's claim as soon as it was filed; however, the court must consider that had there been no injury, as is now being alleged, why is this the first time that these allegations are being made? The court should also consider why the Debtor's are now claiming that no skid marks or substances were found on the floor?

Surely, Mr. Moore, in his vigor to distort facts at any cost, would have made these claims before going through a lengthy investigation had they been true claims.

- **Allegations that the x-rays show that the injury occurred prior to 11/30/2002.**

  If the court will notice that, once again, the Debtor's representatives are attempting to deceive the court with documents that are falsified and or distortions.
  Specifically, the court should consider that the Radiology Report that Greg Moore proudly states he personally sought out and found is a suspicious document at best. Calls to Adventist Health Hanford Community Medical Center confirmed that Dr. Michael Grossman is unknown to the Radiology Department. The only Radiologist working at the hospital at the time of the injury was Dr. Wheeler.

  In fact, the court will find in the attached documents that the physicians belonging to the Hanford Radiology Medical Group are as follows: Don Wheeler, Melvyn Okeon, Kendall Wong, and Jerry Rosen.

  The court will further notice that the radiology report mentioned in the Debtor's objection, found by Mr. Moore, was dictated by Dr. Grossman on 12/05/2002. The injury and the original x-ray occurred on 11/30/2002. Mr. Moore has not provided any proof that the alleged x-ray (read by a physician—Dr. Grossman—who is unknown to the hospital) even belongs to Mr. Perrott. The radiology report dictated by Dr. Grossman, *after the original report was lost*, could belong to anyone. There is absolutely no evidence that the radiology report in question is based on a reading of Mr. Perrott's x-ray.

- **The Debtor's allege that Mr. Perrott refused to cooperate in having his medical provider complete a "Consent to Develop Medical Information" form.**

  It should be noted that the Debtor's and their representatives fail to mention that no medical provider would honor the consent form unless the Claimant signed documents that he would be solely responsible for all financial obligations relating to any examinations.

- **The Debtor's discuss the amount of Mr. Perrott's claim and imply that it is unreasonable or exorbitant.**

  The Claimant respectfully reminds the court that Del L. Toledo, Attorney at Law, after consulting with Mr. Perrott--and having Mr. Perrott seen by a doctor—filed a lawsuit in the amount of $1,000,000.00 (one million dollars). Mr. Perrott, did not retain Mr. Toledo, and is seeking a fair and reasonable settlement from the Debtor's. If Mr. Perrott were the person the Debtor's and their representatives are trying to portray to the court, he would have retained Mr. Toledo and sought the amount Mr. Toledo was advocating.

- ***The Debtor's are falsely alleging that the Claimant has refused to go to mediation and has a "sudden disinterest" in his claim.***

  Mr. Perrott has diligently sought to settle this claim with the Debtor's. Unfortunately, due to unscrupulous activities on the part of the Debtor's and their representatives—as has been illustrated—Mr. Perrott has no reason to place his trust in the Debtor's to deal fairly and honestly in mediation.

  Mr. Perrott is very interested in having this claim settled. The Debtor's and their representatives have yet to make a fair settlement offer, and have refused to speak to the Claimant on several occasions when he has attempted to reach them, despite their statement to the court of having made a "generous settlement offer in a final attempt to avoid litigating this matter." ON AUGUST 22, 2005 I WAS OFFERED by A teleP hONe CAll TeN or FiFteeN THOUSAND Mr. Perrott looks forward to the court bringing this dispute to a favorable DOlIArS conclusion on September 27, 2005. MAXiUM.

Mr. Perrott's petition, personal injury claim does indeed qualify for priority treatment. **28 U.S.C 157 (b)(2)(B)** clearly states that "the Court will not consider any substantive Objection to personal injury or wrongful death claims." By law, Claim number 914 must be considered immediately by the Court and settled prior to bankruptcy.

Mr. Perrott's claim should be upheld without reclassification by the court.

Any reply, or response, to this objection that the Debtors have must be served to:

> Mr. Carter Perrott
> 3163 Hickory Court
> Hanford, CA 93230
> (559) 580-1974

Mr. Perrott possesses the ultimate authority to reconcile, settle, or otherwise resolve any response from the Debtor.

SUE L. ROBINSON

The Claimant respectfully submits this documentation to the Honorable ~~Sue L. Robinson~~, and the Court, as a formal objection to the Debtors' OBJECTION TO CLAIM 914.

Attachments are enclosed.



FedEx                                    PRIORITY OVERNIGHT

emp# 164637    03-JUN-06                 FORM
                                         0200

TRK# 8530 1713 0051                      XB ZWIA
                                                      PHL
19801               -DE-US

Deliv
05J1

JUN 0 5 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

---

**FedEx US Airbill**
Express

**1 From**
Date  6/3/06
FedEx Tracking Number  8530 1713 0051

Sender's Name  CARTER PERROTT

Company

Address  3N8 HICKORY CT

City  HANSFORD    State  CA   ZIP  95230

**2 Your Internal Billing Reference**

**3 To**
Recipient's Name  CHIEF JUDGE

Company  SUE L. ROBINSON

Address  LOCKBOX 31
         844 KING STREET  COURTHOUSE

City  WILMINGTON    State  DE   ZIP  19801

8530 1713 0051

**4a Express Package S**
☐ FedEx Priority Overnight
☐ FedEx 2Day
☐ FedEx Standard Overnight

**4b Express Freight Serv**
☐ FedEx 1Day Freight

**5 Packaging**
☒ FedEx Envelope

**6 Special Handling**
☐ SATURDAY Delivery

Does this shipment contain dangerous goods?
☐ No   ☐ Yes   ☐ Cargo Aircraft Only

**7 Payment** Bill to:
☐ Sender  ☐ Recipient  ☐ Third Party  ☐ Credit Card  ☐ Cash/Check

Total Packages    Total Weight    Total Declared Value

**8 Sign to Authorize Delivery Without a Signature**

467