Westlaw.

Not Reported in F.Supp.                                                                                     Page 1
Not Reported in F.Supp., 1995 WL 563272 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

C
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
Josanne E. HUBSCHER, Plaintiff,
v.
PANTZER MANAGEMENT COMPANY;
Atlantic States Termite & Pest Control; and
Delaware Medical Care, Inc., Defendants.
**Civ. A. No. 93-244-SLR.**

Aug. 25, 1995.
As Corrected Sept. 6, 1995.

Josanne E. Hubscher, New Hope, PA, pro se.
Peter A. Pietra, of Morris, James, Hitchens & Williams, Wilmington, DE, for Pantzer Management Company.
Jeffrey K. Martin, of Elzufon, Austin & Drexler, Wilmington, DE, for Atlantic States Termite & Pest Control.
Joseph R. Slights, III, of Morris, James, Hitchens & Williams, Wilmington, DE, for Delaware Medical Care, Inc.

*MEMORANDUM OPINION*
SUE L. ROBINSON, District Judge.

I. Introduction

*1 Plaintiff commenced this action as "daughter and next of kin ... of Lois I. Zimmerman, deceased," seeking damages from defendants in connection with the untimely death of her mother. (D.I. 1) Defendant Atlantic States Termite and Pest Control ( "Atlantic") was at all times relevant to this suit contracted by defendant Pantzer Management Company ("Pantzer"), management for the Cedar Tree Apartment Complex, to exterminate the insects infesting the Cedar Tree Apartment Complex, where plaintiff's mother resided. Defendant Delaware Medical Care, Inc. ("DMC") owns and operates the Silverside Medical Center where plaintiff's mother sought treatment.

On February 9, 1995 the court narrowed the remaining issues in dispute in this case to: (1) whether there is a causal connection between the extermination procedures at issue and plaintiff's mother's death; and (2) whether defendant DMC was negligent in its care of plaintiff's mother. (D.I. 117) The court issued an order requiring plaintiff to submit to the court a letter from Dr. Speth, plaintiff's expert witness, confirming that he is qualified and prepared to offer expert testimony as to the above issues. (*Id.*) Presently before the court is defendant Atlantic's motion for summary judgment (D.I. 122), Pantzer's motion for summary judgment (D.I. 119) and DMC's motion for summary judgment [FN1] (D.I. 149). For the reasons stated below, the court shall grant defendants' motions.

II. Summary Judgment Standard of Review

Federal Rule of Civil Procedure 56(c) provides that a party is entitled to summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Where, as here, the nonmoving party opposing summary judgment has the burden of proof at trial on the issue for which summary judgment is sought, she must then make a showing sufficient to establish the existence of an element essential to her case. The "adverse party may not rest upon the mere

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                 Page 2
Not Reported in F.Supp., 1995 WL 563272 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

allegations [of the complaint], but the adverse party's response, by affidavits [or other evidence], must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); see *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, the moving party is entitled to judgment as a matter of law. *Id.* at 322.

### III. Background

*2 Plaintiff speculates in her pleadings and motion papers that her mother's death was caused by toxic exposure to pesticides used in her mother's apartment complex. According to the record at bar, an Atlantic technician treated the apartment of Lois I. Zimmerman (plaintiff's mother, "Zimmerman") on two occasions. (D.I. 123 at A-81, 82) The first service was on November 14, 1989, when Dursban LO 0.5% was sprayed on the baseboards. (*Id.*) The second treatment was administered on October 15, 1990 when the technician applied PT565 and PT250, both Pyrethrins, to the cracks and crevices in decedent's apartment. (*Id.*) Plaintiff alleges in the suit at bar that defendant Atlantic was negligent in its use and application of said pesticides thereby proximately causing the death of Zimmerman. (D.I. 44 at 12) Defendant Atlantic argues that plaintiff has failed to provide any evidence of a causal connection between the extermination procedures at issue and her mother's death. (D.I. 122 at 2) Defendant Atlantic moves for summary judgment as to plaintiff's claims against it. (D.I. 122)

Plaintiff alleges in the complaint that Pantzer was negligent by failing to provide decedent with a safe and habitable environment and due to Pantzer's failure "to adequately warn of known dangers, deceased was unnecessar[ily], unreasonably and dangerously subjected to highly toxic levels of poison proximately causing her death." (D.I. 44 at 10)

On May 20, 1991, Zimmerman sought treatment at Silverside Medical Center. (D.I. 150 at 7) Upon presentation, Zimmerman complained of back and lower chest pains and recent bouts of vomiting. (*Id.*) The attending physician, Dr. Garroway, prescribed Erythromycin, explained that her blood platelets were low and gave instructions for Zimmerman to see a specialist and to go to the emergency room should her symptoms worsen. (*Id.*) On May 23, 1991, Zimmerman died, leading to the filing of plaintiff's claims of negligence and medical malpractice. (*Id.*) Defendant DMC moves for summary judgment on the grounds that plaintiff's medical expert is not competent to offer such expert medical testimony pursuant to 18 Del.C. §§ 6853 and 6854. (D.I. 150)

### III. Discussion

The court will address the motions pending in this case *seriatim.*

#### A. Atlantic's Motion for Summary Judgment

The liability of defendant Atlantic depends upon plaintiff proving that the defendant's negligent conduct proximately caused the decedent's death. *See Culver v. Bennett,* 588 A.2d 1094 (Del.1991). Under Delaware law, establishing proximate cause requires that the plaintiff prove that but for the tortious conduct of the defendant, the injury which was suffered would not have occurred. *Id.* at 1097. The issue of proximate cause is ordinarily a question of fact to be submitted to the jury. *Id.* at 1098. However, before the question of proximate cause may be submitted to the jury, the plaintiff is required to establish a prima facie case on that issue. Such a case can be made based upon an inference from the plaintiff's competent evidence, only if such a finding relates to a matter which is within a layperson's scope of knowledge. However, "[i]f the matter in issue is one within the knowledge of experts only and not within the common knowledge of laymen, it is necessary for the plaintiff to introduce expert testimony in order to establish a *prima facie* case." M.S. Madden, *Products Liability* 533 (2nd ed. 1988). See *Mountaire of Delmarva, Inc. v. Glacken,* 487 A.2d 1137, 1141 (Del.Super.1984); *Weiner v.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 3
Not Reported in F.Supp., 1995 WL 563272 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

*Wisniewski,* 213 A.2d 857, 858 (Del.1965).

\*3 It has been generally recognized that the causation of latent physical conditions or the existence of a particular disease must rest upon the individualized findings and opinion of a trained physician. 31A *Am.Jur.2d* Expert and Opinion Evidence § 243 (1989). Therefore, in order to make a *prima facie* case with respect to the cause of decedent's death, the plaintiff must introduce direct competent expert medical testimony that defendant Atlantic's actions were a proximate cause of plaintiff's mother's death. *Lee v. A.C. & S. Co.,* 542 A.2d 352, 355 (Del.Super.1987). Plaintiff's expert medical witness must state, in terms of reasonable medical probability, that there was a causal relationship between the extermination procedures and plaintiff's mother's death, i.e., that but for the decedent's exposure to pesticides, the decedent's death would not have occurred. Without such expert medical testimony, the issue of proximate cause cannot be submitted to the jury.

In the instant case, plaintiff alleges that Dr. Speth's affidavit attributes plaintiff's mother's death, within a reasonable degree of medical certainty, to exposure to Dursban which was applied by defendant Atlantic to the Cedar Tree Apartment complex. (D.I. 131 at 15-16) This argument fails, however, because it is unsupported by the facts. Dr. Speth's affidavit does not provide prima facie evidence that the extermination procedures employed by defendant proximately caused the death of plaintiff's mother. Specifically, Dr. Speth stated that prior to her death plaintiff's mother exhibited some symptoms and signs consistent with exposure to Dursban, as well as a bilateral adrenal hemorrhage. (D.I. 118 at 2) Dr. Speth stated that, to a reasonable degree of medical certainty, the autopsy histologic slides of the heart revealed findings consistent with toxic myocarditis, while those of the liver displayed cytotoxic periportal hepatitis. (*Id.* at 2-3) In addition, Dr. Speth acknowledged that histologic review also revealed evidence of preexisting conditions "suggestive of a degree of heart failure." (*Id.* at 2) Although Dr. Speth stated that Dursban exposure could produce toxic myocardiopathy and toxic hepatitis (*id.*), he did not opine that exposure to the pesticides was the cause of decedent's death. In fact, Dr. Speth stated that the medical examiner's failure to perform testing for Dursban prevented the determination of " the true circumstances and cause of death of Lois Zimmerman apart from the routine autopsy findings." (*Id.* at 3) Therefore, in the absence of direct expert medical testimony providing a direct nexus between the defendant's pesticide applications and decedent's death, the plaintiff has failed to satisfy the burden of proof which is required to establish a *prima facie* case on the issue of causation. Accordingly, the court shall grant summary judgment in favor of defendant Atlantic.

B. Pantzer's Motion for Summary Judgment

\*4 The defendant, Pantzer, as landlord of the demised premises, "is subject to liability for physical harm caused to the tenant and others upon the leased property with the consent of the tenant or his subtenant by a dangerous condition existing before or arising after the tenant has taken possession, if he has failed to exercise reasonable care to repair the condition and the existence of the condition is in violation of: ... (2) a duty created by statute or administrative regulation." Restatement (Second) of Property § 17.6 (1977).

It is clear from both the Delaware Housing Code, 31 Del.C. § 4121, and the Wilmington Housing Code, § 34-236(12), that Pantzer has a statutory duty to exterminate for pests and insects. Both provide that the responsibility of extermination be placed on the owners of multi-unit buildings. A violation of a statutory duty by the landlord has been held to be negligence in law or negligence *per se. Brown v. Robyn Realty Co.,* 367 A.2d 183 (Del.Super.1976).

However, plaintiff contends in the complaint that defendant did not act with reasonable care in the extermination process. Decedent made Pantzer aware of the bug worm problem in her apartment through letters and an inspection by the Department of Public Works. (D.I. 121 at A-6, 7) Defendant Pantzer contracted with Atlantic to exterminate the apartment, complying with both codes. Moreover, there is no statutorily provided duty to support

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 4
Not Reported in F.Supp., 1995 WL 563272 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

plaintiff's allegation of Pantzer's failure to warn decedent concerning the dangers of pesticides. Neither Atlantic nor Statewide Exterminating Company provided Pantzer with notices of precautions needed for the Dursban application on November 14, 1989 for bug worms nor on April 2, 1991 for termites. (*Id.* at A-33) Moreover, decedent did not have nor is plaintiff aware of medical evidence concerning decedent's apparent allergies to Dursban or other pesticides. (*Id.* at A-47-48)

This court finds that defendant Pantzer acted with reasonable care when complying with the extermination statutes and also warning tenants of known precautions to pesticide application.FN2

C. DMC's Motion for Summary Judgment

Delaware law requires that before negligence can be established in a medical malpractice action, in the absence of several exceptions which are not relevant to this case, plaintiff's claims must be supported by expert medical testimony as to both the alleged deviation from the applicable standard of care and causal connection between the wrongful conduct and the alleged injury. 18 Del.C. § 6853.FN3 *See Burkhart v. Davies,* 602 A.2d 56, 59, (Del.1991), *cert. denied,* 112 S.Ct. 1946 (1992). Furthermore, when objection is made to the witness' qualifications, plaintiff is required to establish that her expert witness is qualified to give expert medical testimony under the standards set forth in 18 Del.C. § 6854. *Loftus v. Hayden,* 391 A.2d 749, 753 (Del.1978). Whether a witness satisfies the statutory criteria is a determination to be made by the court. *Id.* In the absence of an applicable statutory exception or competent medical testimony establishing negligence, defendant is entitled to summary judgment. *See Burkhart,* 602 A.2d at 60. Moreover, when there has been adequate time for discovery and the record unambiguously reflects that plaintiff's allegations are not and will not be supported by any expert testimony, defendant's motion for summary judgment does not require the support of an expert's affidavit proving conformance to community standards. *Id.*

*5 The Delaware expert witness statute sets forth a two-prong test of competency for expert medical witnesses. Under 18 Del.C. § 6854(a), a person "familiar with that degree of skill ordinarily employed in the community or locality where the alleged malpractice occurred" may be found competent. Alternatively, a witness may qualify under 18 Del.C. § 6854(b). This subsection establishes three conditions which an out-of-state physician must meet in order to be presumed competent. First, the physician must have been in active practice for at least the preceding five years. Second, the physician must practice in a state contiguous to Delaware, within 75 miles of Dover. Finally, the standard of care in the locality where the physician practices or teaches must be equivalent to that of the locality where the alleged malpractice occurred. The following factors are among those that the court must consider in determining the competency of an expert medical witness: 1) direct observation in Delaware; 2) study in Delaware (as a medical student on rotation, intern or resident); 3) care of Delaware patients referred by Delaware physicians; 4) teaching of students who have dispersed to Delaware; 5) reading of Delaware medical records, reports, journals, etc.; 6) consultation with Delaware physicians; and 7) attendance at meetings with Delaware physicians. *Id.*

Review of Dr. Speth's professional background indicates that he has not acquired the level of familiarity required by § 6854(a). The Delaware Supreme Court in *Loftus* stated that "a witness offered to give 'expert medical testimony' should establish that he 'knows' what degree of skill is ordinarily employed here and that he is well acquainted or thoroughly conversant with it." *Id.* at 752. Although Dr. Speth claims familiarity with accepted medical standards as they relate to Zimmerman's care (D.I. 118 at 1), when objection is made to his competence "the witness must present facts from which the court can reasonably conclude that the witness has the foundation essential to the expertise he claims." *Id.* at 753. Dr. Speth is an out-of-state forensic pathologist who has never practiced in, observed the practice of medicine in, nor studied emergency medicine in Delaware. While the court in *Loftus* emphasized that the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 5
Not Reported in F.Supp., 1995 WL 563272 (D.Del.)
(Cite as: Not Reported in F.Supp.)

methods it enumerated were not meant to be exhaustive, the absence of these factors in Dr. Speth's professional background is indicative of a lack of acquaintance with the applicable standard of care in Delaware. *Suarez v. Wilmington Medical Center, Inc.*, 533 A.2d 1249, 1252 (Del.Super.1987). In fact, neither the testimony of Dr. Speth nor his professional background contain any facts which demonstrate that he possesses any familiarity with the standards of care followed in the Wilmington medical community generally or emergency medical practices specifically. Accordingly, the court concludes that Dr. Speth fails to qualify as an expert under § 6854(a).

*6 Similarly Dr. Speth fails to meet the requirements of § 6854(b). Defendant DMC does not dispute that Dr. Speth satisfies the first two requirements of this subsection. However, defendant argues that plaintiff has failed to provide evidence to satisfy the third requirement. (D.I. 150 at 20) Section 6854(b) unambiguously requires that plaintiff establish that the standard of care in the expert's medical community be equivalent to the standard followed by the medical community where the alleged malpractice occurred. Additionally, the "applicable standard must be required of the witness where he practices." *Good v. Bautista*, C.A. No. 84C-MR-46, Balick, J., slip op. at 3 (Del.Super. June 8, 1987). Thus, § 6854(b) " clearly implies that only a physician who administers the same kind of medicine or surgical treatment about which he proposes to testify will be presumed to be competent to testify as to the standard applicable to the defendant." *Id.* Dr. Speth is a pathologist who has not practiced emergency medicine since his residency. However, Dr. Speth asserted that in his role as medical examiner he maintained "a very, very close, intense interaction with the emergency rooms in my jurisdictions." (D.I. 145 at 30) In addition, he stated that in a few instances he "provided emergency services at scenes with the emergency rooms as the controlling physician and that happened when I would respond to a scene and there were still emergency situations there." (*Id.* at 31) Such experiences, however, do not qualify Dr. Speth to speak as an expert witness as to the standards of care and procedures employed in the practice of emergency medicine.

In addition, plaintiff has made no showing that the standard of care in Dr. Speth's community is the same or equivalent to that followed by the medical community in Wilmington, Delaware. Dr. Speth's contention that the applicable standard of care was " beyond national" and was part of "a basic fund of knowledge that is provided to every medical student " does not address whether that standard of care is the standard of care followed in Delaware. (*Id.* at 204) As in the case at bar, "where a party attempts to satisfy the third condition, or the 'equivalency' requirement, of section 6854(b), through witnesses asserting the existence of a 'nationwide' standard, the party must also establish that the term ' nationwide,' as used by those witnesses, encompasses both the proffered expert's community and the relevant Delaware community." *Baldwin v. Benge*, 606 A.2d 64, 68 (Del.1992). In the case at bar, plaintiff has established neither the existence of a national standard nor that the Delaware medical community follows such a standard. Accordingly, the court finds that Dr. Speth fails to qualify as an expert under § 6854(b).

The court concludes that Dr. Speth has failed to qualify as an expert witness under 18 Del.C. § 6854. Therefore, in the absence of expert testimony plaintiff has failed to demonstrate that there exists a genuine issue of fact as to whether defendant DMC's conduct violated the existing Delaware standard of care. Accordingly, the court shall grant summary judgment in favor of defendant DMC.

IV. Conclusion

*7 For the reasons stated herein, defendants' motions for summary judgment shall be granted. An order consistent with this memorandum opinion shall issue forthwith.

FN1. Plaintiff has failed to respond to defendant DMC's motion for summary judgment.

FN2. Even if Pantzer was found to have

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.           Page 6
Not Reported in F.Supp., 1995 WL 563272 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

acted unreasonably, plaintiff has not presented sufficient facts to demonstrate that pesticide absorption was the proximate cause of decedent's sudden death. *See supra,* discussion for Atlantic's summary judgment.

FN3. Del.C. § 6853 provides that "[n]o liability shall be based upon asserted negligence unless expert medical testimony is presented as to the alleged deviation from the applicable standard of care in the specific circumstances of the case and as to the causation of the alleged personal injury or death, except...."

D.Del.,1995.
Hubscher v. Pantzer Management Co.
Not Reported in F.Supp., 1995 WL 563272 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:93CV00244 (Docket) (May. 20, 1993)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.